**LINCOLN COUNTY et al.,
Plaintiffs/Appellees,**

v.

**Gentry CROWELL, Secretary of State
of Tennessee, et al.,
Defendants/Appellants.**

Supreme Court of Tennessee,
at Nashville.

Nov. 18, 1985.

Michael W. Catalano, Asst. Atty. Gen. (W.J. Michael Cody, Atty. Gen. & Reporter, Nashville, of counsel) for defendants/appellants.

OPINION

PER CURIAM.

In response to the decision of this Court in *State ex rel. Lockert v. Crowell,* 656 S.W.2d 836 (Tenn.1983) the General Assembly enacted 1984 Tenn.Pub.Acts ch. 778, known as the House Reapportionment Act of 1984. This Act was signed into law by the Governor on May 23, 1984.

Within less than two weeks a suit was filed in the United States District Court for the Middle District of Tennessee at Nashville seeking a declaratory judgment as to whether this reapportionment statute complied with federal constitutional requirements. That case was decided by a three-judge federal court on April 2, 1985, after the instant case had been decided by the Chancellor and was on appeal to this Court.

All parties in the present case agreed that proceedings in the instant case should be held in abeyance in this Court pending disposition of the federal action.

The judgment of the district court was that the statute in question met federal constitutional requirements. The action was dismissed. No appeal was taken, and that judgment became final prior to oral argument in this cause.

The three-judge district court unanimously held that the plan of reapportionment

represented a rational state policy. The members of that Court cited the *Lockert* decision, *supra*, one member stating that he considered that the decision of this Court therein reflected the traditions and constitutional demands of the State of Tennessee in light of the many reapportionment cases which have been decided in the state and federal courts in this jurisdiction during the past two decades.

There is no question but that the statute in question meets the general guidelines established by this Court in the *Lockert* case, *supra*, in that it does not divide more than thirty counties and does not divide any county more than once. It complies with the maximum population deviation suggested in that opinion and it has been successfully defended in federal litigation which has now proceeded to final judgment.

The instant case was filed in Chancery Court at Nashville on the same day when the statute was signed into law. It was brought by officials of two counties in both their official and personal capacities and it sought a declaration that § 2(d) of the Act was unconstitutional because it unnecessarily divided the counties of Lincoln and Marshall in forming the 62nd and 65th Districts for the House of Representatives, respectively. The plaintiffs in the action, appellees here, suggested that a plan could be drawn in accordance with an exhibit prepared by them and attached to the complaint which would divide only Lincoln County and which would not significantly increase the population deviation from the theoretical norm.

The suit did not attack the statute as a whole, but in effect attacked only the division of Marshall County and sought a different division of Lincoln County. Neither side offered any testimony at trial. The case was presented on a stipulation of facts, and each side in effect insisted that the other had the burden of proof.

In their complaint appellees alleged that the General Assembly had not shown good faith with respect to the two districts involved and that the district lines were drawn for purely political considerations to preserve or protect the political careers of incumbent members of the House of Representatives. These allegations were categorically denied in the answer, and no proof whatever has been adduced in support of them, unlike the situation in the *Lockert* case, *supra*, with respect to the division of Washington County. Appellees in effect admit that at least one county of the four counties comprising the two districts must be divided in order to comply with federal constitutional principles, but insist that the Legislature did not make a good faith effort to draw the lines, with the result that the division of two counties violates the provisions of Art. 2, § 5, of the State Constitution.

The Chancellor so held and further concluded that Lincoln County was divided to a greater extent than was necessary to meet the federal constitutional requirements. Accordingly he declared unconstitutional and void those portions of § 2(d) of Chapter 778 which pertained to the 62nd and 65th Districts. He declined, however, to adopt the alternate plan which the appellees had submitted or to enjoin an immediately impending election under the statute.

We are of the opinion that the proof is insufficient in this case to warrant the action taken by the Chancellor. Appellees have offered no evidence to demonstrate bad faith by the General Assembly or to establish deliberate gerrymandering. The two districts involved are but two out of ninety-nine districts, and the two counties which are divided under the statute are but two of twenty-nine counties which are so divided. The general plan has been held to meet federal constitutional standards and on its face it meets the guidelines set forth by this Court in the *Lockert* case, *supra*.

It was held both in that case and in its predecessor, *State ex rel. Lockert v. Crowell*, 631 S.W.2d 702 (Tenn.1982), that the state constitutional prohibitions against the division of counties in establishing legislative districts must yield to federal constitutional requirements under the Equal Protection clause. In the second opinion in the

*Lockert* case, *supra,* this Court recognized that exact mathematical equality was not possible and also recognized that it would be necessary to cross some county lines in order to achieve acceptable levels of population in the respective districts in accordance with federal requirements. The Court allowed considerable tolerance to the General Assembly in adopting a reapportionment plan, recognizing that county lines and even voting precinct lines have not been drawn in accord with strict mathematical equality in population.

While appellees were not parties to the federal litigation, they conceded that it was relevant to the present case. The determination of the District Court that federal guidelines have been met, together with the stipulation that the tolerances suggested by this Court in the *Lockert* case, *supra,* have also been met, persuades us that it would be improper to set aside individual district lines on the ground that they theoretically might have been drawn more perfectly, in the absence of any proof whatever of bad faith or improper motives.

Obviously, even under the plan submitted by appellees, Lincoln County must be divided in order to achieve an acceptable district population. Under their plan, Marshall County would not have to be divided, but there is no evidence whatever in this record as to how these district lines were derived with respect to adjoining districts or with respect to the statutory plan as a whole.

We make no decision upon the entire plan, but we are of the opinion that the Chancellor erred in sustaining a piecemeal attack upon a small portion of it, in the absence of evidence demonstrating its impropriety. Although we do not and under this record cannot pass upon the validity of the statute as a whole, we are of the opinion that to permit separate, minute piecemeal attacks such as this would involve both the courts and the General Assembly in needless and protracted litigation over a subject for which the General Assembly has principal responsibility and in which it has primary authority.

This Court has previously recognized the desirability of preserving county lines where possible and has also recognized that the state constitutional provisions have not been superseded by federal constitutional requirements. Nevertheless we find unpersuasive the contention of appellees, unsubstantiated by proof, that the lines as drawn by the General Assembly in this case will cause unnecessary voter confusion or inconvenience. An examination of the statute reveals that the urban communities of the state are divided in much greater detail and that district lines run down streets and portions of streets to a much greater extent than the divisions of Lincoln and Marshall Counties in the present case. These counties are divided only along existing county commission district lines. In the absence of evidence, we cannot presume that these divisions were arbitrarily made or that they would have the effect upon voters asserted in argument.

The judgment of the Chancellor is reversed and the suit is dismissed at the cost of appellees. The cause will be remanded to the trial court for collection of costs accrued there and for any further orders which may be necessary.