STATE of Tennessee ex rel. W.B. LOCKERT, Jr., et al., Appellants,

v.

Gentry CROWELL, Secretary of State of the State of Tennessee, et al., Appellees.

Supreme Court of Tennessee, at Nashville.

April 27, 1987.

Robert L. Perry, Jr., Ashland City, Henry Haile, Nashville, for appellants.

Richard H. Dinkins, Williams & Dinkins, Nashville, for intervenors Tennessee Voters Council and Avon N. Williams, Jr.

W.J. Michael Cody, Atty. Gen. and Reporter, Michael W. Catalano, Deputy Atty. Gen., Nashville, for appellees.

## OPINION

FONES, Justice.

On this appeal, plaintiffs pursue the single issue that the latest Senate Reapportionment Act, Chapter 753, Public Acts 1984, is unconstitutional because a portion of Shelby County is detached and joined with Tipton and Lauderdale Counties to form Senate District 32 in violation of Article II, Section 6, Tennessee Constitution. The chancellor upheld the constitutionality of Chapter 753 and we affirm.

This is chapter three in the tortured history of the intractable reapportionment problem. This Court's prior rulings are reported in *State ex rel. Lockert v. Crowell*, 631 S.W.2d 702 (Tenn.1982), referred to as *Lockert I*, and *State ex rel. Lockert v. Crowell*, 656 S.W.2d 836 (Tenn.1983) referred to as *Lockert II*.

Many issues have been considered, decided and resolved, but the conflict between the federal constitutional requirement of equality of population among districts and the Tennessee constitutional prohibition against dividing a county to form a senatorial district continues to be the intractable problem and is at the center of this one remaining issue.

In *Lockert II*, the Senate Reapportionment Act before us was Chapter 909, Public Acts 1982. In that opinion we discussed at length the problem created by the population figures in the major metropolitan counties of Knox, Davidson and Shelby. Briefly, the problem is created by the fact that the equal population figure for thirty-three senatorial districts in Tennessee is 139,114, which, when divided into the population of those counties, results in a large deviation. For example, the population of Shelby County for reapportionment purposes is 777,113. That figure divided by 139,114 equals 5.586. With five senatorial districts, each district would have a population of 155,423 and the deviation would be + 11.72%. With six districts the deviation would be − 6.9%. Those deviations added to the largest plus or minus deviation in other districts would produce total deviations of + 12.13% and + 16.48%.

In Knox and Davidson Counties the comparable deviations are greater than the Shelby County figures and we expressly authorized a single division of each of those counties and the joining of the excess population with adjacent districts. However, Shelby County presented a marginal situation. If the Legislature elected to give Shelby County six senators, the deviation would be − 6.9%. If only five senators were allowed for Shelby County and no part of it detached and joined with an adjacent district, the deviation would be + 11.72%. That percentage, plus the least obtainable minus deviation, would total + 16.48%, a percentage too precarious under the federal constitutional guidelines to risk. We concluded, on the basis of a plan that was Exhibit Four in that record, that the Legislature should attempt to avoid dividing Shelby County while correcting the divisions of Knox and Davidson Counties, which we had found to be in violation of the state constitution and correctable without colliding with the federal constitution. We recognized that the Legislature had not adopted any plan allocating six senatorial districts entirely within Shelby County and detaching no part of it to adjoin with adjacent districts and that considerations that were not aired in *Lockert II* might arise. Thus we qualified our conclusion by noting that, "on the record before us," we found no justification for splitting Shelby County and expressly recognized that it might be necessary to detach a segment of Shelby County to reduce a variance in an adjoining district or to prevent the dilution of minority voting strength. *Id.* at 841.

On this appeal, we have a different record before us than in *Lockert II*. The Reapportionment Act, Chapter 753, Public Acts of 1984, unquestionably conforms to federal constitutional requirements and unquestionably conforms to state constitu-

tional requirements with the possible exception of the single division of Shelby County. The additional evidence consists of a stipulation, a pre-trial order and the testimony of Frank Hinton.

Mr. Hinton testified that there were "just barely enough people in Shelby County to create six districts" and that they would have to be almost exactly the same size to keep the deviation to − 7%. He was asked what the effect would be on the adjoining districts if no part of Shelby County was detached, and he responded as follows:

A. If Tipton and Lauderdale Counties are not included in the district with Shelby County, then the fifty-five thousand, fifty-six thousand people in those two counties must be located in other districts. It is a spreading operation. Which district in West Tennessee would basically all have to be redrawn and the size of the district increased to a much higher level? And it would involve, I think, not only all of West Tennessee, but probably necessarily, in my opinion, some of Middle Tennessee, as well, including [the] Davidson County area.

Q. How many people are in Tipton and Lauderdale Counties that you're attempting to spread out?

A. I believe about fifty-six thousand in the two counties, jointly.

Q. What is the effect, then, on those counties—on those districts in West Tennessee in terms of their population deviation?

A. It is obviously going to increase those districts on the plus side, because we have got that many additional people to utilize in the district somewhere. And where you use them depends a whole lot on county size and what kind of groupings you can put together to create a district.

We cannot create a district of an exact population size, because we're restricted from dividing these rural counties, and, therefore, we have to use the building blocks as we find them. I have not been able to utilize the extra number of individuals that have to be assimilated into the districts without coming into about half of Middle Tennessee.

With respect to dilution of minority voting strength, we observed in *Lockert II* that Senate District 19 in Davidson County is predominantly black but that the black population in that district declined from 73% in 1968 to 63% in 1982, during which time the district was represented by Senator Avon N. Williams, Jr. Under the present Reapportionment Act, District 19 is 6,440 people below the ideal for population. Mr. Hinton noted that the effort to assimilate the 55,000 population of Tipton and Lauderdale Counties might reach into Davidson County, three of whose four districts, including District 19, are between 4 and 5% below the ideal population. It would be difficult to find additional population to add to District 19 without further diluting its minority voting strength.

An examination of the reapportionment acts that we have had before us in *Lockert I, Lockert II,* and *Lockert III,* and Exhibit Four to the record in *Lockert II,* confirm Mr. Hinton's testimony. The number of people that are detached from Shelby County and Davidson County dictate the alignment of at least thirty-seven counties in West Tennessee and Middle Tennessee. A completely different alignment of the counties in Districts 21 through 26 is found in each of the four plans mentioned above. Only Senatorial District 27, consisting of Gibson, Crockett and Madison Counties, has remained constant throughout those plans.

In *Lockert I,* we held that whether the Legislature had made a good faith effort to construct senatorial districts which comply with both federal and state constitutions was an issue of fact. Plaintiffs argued in the trial court and here that Shelby County was divided and West Tennessee were aligned to serve the interests of incumbents. However, plaintiffs presented no proof whatever on that issue.

In *Lockert I,* we observed as follows: "Although the law on this point is not fully developed, the cases indicate that political considerations are a reality and also have a place in the creation of legislative districts. (Citations omitted.)" 631 S.W.2d at 715.

The chancellor found that the Legislature had acted in good faith in its efforts to comply with both federal and state constitutions in enacting Chapter 753, Public Acts of 1984. We concur in that finding.

We affirm all the principles of law enunciated in *Lockert I* and *Lockert II* and resolve all doubts with respect to the Legislature's justification in dividing Shelby County in favor of the constitutionality of Chapter 753, Public Acts of 1984, the fourth reapportionment act since the census of 1980, and terminate this serial litigation.

Affirmed. Costs are adjudged against plaintiff.

HARBISON and DROWOTA, JJ., and GREER, Special Justice, concur.

BROCK, C.J., concurs.

BROCK, Chief Justice, concurring.

I concur in the decision of the Court and in the majority Opinion except for the references therein to "the dilution of minority voting strength." I cannot and do not agree with the suggestion in the Opinion that in drawing legislative district lines the legislature must take care to avoid "dilution of minority voting strength."

I continue to adhere to the views which I expressed in *State, ex. rel. Lockert v. Crowell,* Tenn., 656 S.W.2d 836 (1983):

"In my view, the Constitution of the nation and that of Tennessee are color-blind. It is not constitutionally permissible to discriminate *in favor* of black people any more than it is to discriminate *against* black people. It is my opinion that in drawing legislative district lines the race, color, religion, ethnic heritage, political persuasion, economic condition, or the like, of the voters or their incumbent representatives are totally irrelevant considerations." 656 S.W.2d at 845.

Aside from these racial considerations, I fully concur in the Opinion of the Court.