# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 24, 2013 Session

## KERMIT L. MOORE, JR., ET AL. V. STATE OF TENNESSEE, ET AL.

### Direct Appeal from the Chancery Court for Davidson County
### No. 12402III    Ellen H. Lyle, Chancellor

### No. M2013-00811-COA-R3-CV - Filed January 10, 2014

Plaintiffs, eight Shelby County registered voters, filed an action for declaratory judgment challenging the constitutionality of the 2012 Senate Reapportionment Act on the ground that it divides more counties than necessary in contravention of Article II, Section 6, of the Tennessee Constitution. The trial court denied Plaintiffs' motion for summary judgment and subsequently granted the Defendants' motions to dismiss. The facts are not disputed and we hold that, as a matter of law, the Act is not unconstitutional. We affirm judgment in favor of Defendants.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Robert D. Tuke, Paul W. Ambrosius, Nashville, Tennessee, Van D. Turner, Jr., Memphis, Tennessee, and Anita S. Earls and Allison J. Riggs, Durham, North Carolina, for the appellants, Kermit L. Moore, Jr., Vanecia Kimbrew, Felecia D. Boyd, Regenna Williams, Roshun Austin, L. Lasimba M. Gray, Jr., and G. A. Hardaway, Sr.

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General and Janet M. Kleinfelter, Deputy Attorney General, for the appellees, State of Tennessee, Bill Haslam, Tre Hargett and Mark Goins, in their official capacities.

John L. Ryder, Memphis, Tennessee, for the appellee, Tennessee Senate Republican Caucus.

**OPINION**

This appeal arises from an action challenging the constitutionality of the Senate Reapportionment Act of 2012,[1] which reapportioned the Tennessee State Senate ("the Senate") following the 2010 federal census as required by Article II, section 4, of the Tennessee Constitution. Plaintiffs, eight Shelby County registered voters, contend the Reapportionment Act violates Article II, section 6, of the Tennessee Constitution because it splits eight counties.[2] Plaintiffs appeal the trial court's judgment granting Defendants' motions to dismiss following denial of Plaintiffs' motion for summary judgment on the grounds that the trial court erred in its assignment of the burden of proof in the matter and erred by determining that the reapportionment act was not unconstitutional where it achieved a variance of 9.17% from the ideal population of 192,306 per district but split eight counties. For the reasons discussed below, we affirm judgment in favor of Defendants/Appellees.

### *Background and Procedural History*

Following the 2000 decennial census, the General Assembly adopted a Senate reapportionment plan that split seven counties and had an overall range deviation of 9.53% from the then ideal district population of 172,403. The results of the census held in 2010 demonstrated that, as a result of population changes, the Senate districts ranged from 32.4% over the ideal to 24.02% under the ideal, resulting in an overall deviation of 56.42%. The Senate accordingly appointed a redistricting committee and, on September 13, 2011, Lieutenant Governor Ronald Ramsey ("Lt. Gov. Ramsey") issued a notice to Senate members inviting participation in the redistricting process. In his notice, Lt. Gov. Ramsey notified members that proposed plans must be submitted no later than November 1, 2011. Senate Bill 1514 ("SB 1514") was the only plan introduced by the November 2011 deadline. On January 13, 2012, Senator Jim Kyle ("Senator Kyle") offered alternate plans known as Amendment 5 and Amendment 6. Amendment 6 achieved an overall deviation of 0% but split 24

_____

[1] Ch. 514, Public Acts of 2012.

[2] Article II, Section 6 provides:

> The number of Senators shall be apportioned by the General Assembly among the several counties or districts substantially according to population, and shall not exceed one-third the number of Representatives. Counties having two or more Senators shall be divided into separate districts. In a district composed of two or more counties, each county shall adjoin at least one other county of such district; and no county shall be divided in forming such a district.

counties.  Amendment 5 split five counties and had an overall deviation of 10.05%.

The General Assembly adopted the plan proposed by SB 1514 (hereinafter "the Act" or the "redistricting plan"), which became effective February 9, 2012, and is codified at Tennessee Code Annotated § 3-1-102 (2013 Supp.)  The redistricting plan has a deviation range of approximately 4.42% (8,506 persons) over and approximately -4.74 (9,124 persons) under the ideal district population of 192,306, and results in an overall deviation of 9.17%, or 17,630 persons.  It also splits eight counties:  Bradley, Hamilton, Carter, Davidson, Rutherford, Knox, Sevier, and Shelby.  Additionally, the number of Senate districts in Shelby County was reduced from six to five.  Current Senate District ("SD") 32  includes part of Shelby County and Tipton County.  We take judicial notice that SD 32 formerly included part of Shelby County, Dyer County and Lauderdale County.  Tenn. Code Ann. § 3-1-102 (2003).  We also note that SD 28, which formerly was composed of part of Shelby County, is now composed of Giles County, Lawrence County, Lewis County, Maury County, Perry County and Wayne County.  Tenn. Code Ann. § 3-1-102 (2013 Supp.)  Dyer County and Lauderdale County are now included in SD 27, which also includes Crockett County, Lake County, and Madison County.  *Id.*

In March 2012, Kermit L. Moore, Jr., Vanecia Kimbrew, Felecia D. Boyd, Regenna Williams, Roshun Austin, L. LaSimba M. Gray, Jr., and G.A. Hardaway, Sr. (Mr. Hardaway; (collectively, "Plaintiffs") all Shelby County registered voters, filed a declaratory judgment action in the Chancery Court for Davidson County, naming as Defendants the State of Tennessee, Governor Bill Haslam in his official capacity, Acting Secretary of State Tre Hargett in his official capacity, and Acting Coordinator of Elections Mark Goins in his official capacity (collectively, "Defendants").  In their complaint, as amended  March 19, 2012, Plaintiffs asserted that they were African-American residents of Shelby County and registered voters engaged in local civic organizations.  They asserted that the House Ad Hoc Committee on Redistricting did not hold public hearings following the public release of SB 1514; that the Tennessee Black Caucus of State Legislators ("TBCSL") introduced an alternate plan, Amendment 5, which would split only five counties with a total population variance of 10.05%; and that Amendment 5 was rejected although it was "more compliant with the state constitutional requirement of minimizing split counties, and also compliant with the one-person, one vote requirement of the 14th Amendment [to the United States Constitution]."  Plaintiffs asserted the plan offered by the TBCSL was more compliant with the Tennessee Constitution's prohibition against splitting counties, and that, under *State ex rel Lockert v. Crowell*, 656 S.W.2d 836 (Tenn. 1983), the 10.05%  deviation in the TBCSL plan was constitutionally permissible. They prayed for a declaration that the Act was facially unconstitutional pursuant to Article II, Section 6, of the Tennessee Constitution, and for preliminary and permanent injunctive relief.

Defendants answered in April 2012. In their answer, Defendants denied that Plaintiffs were entitled to relief and prayed the court to dismiss the complaint for failure to state a claim.

In June 2012, Plaintiffs filed a motion for summary judgment to which they attached an affidavit of Plaintiff G.A. Hardaway, Sr. (Mr. Hardaway), a member of the Tennessee House of Representatives and vice chair of the TBCSL; an affidavit of Anthony Fairfax (Mr. Fairfax), a demographic and mapping consultant and president of CensusChannel LLC; and a document entitled "The 'Regional Integrity Plan' - The Tennessee Senate for a new decade." The matter was set to be heard on July 27; on July 23 Defendants moved to continue the matter. Plaintiffs filed their statement of undisputed facts on September 21. In their statement, Plaintiffs reiterated only that the redistricting plan adopted by the General Assembly split eight counties and achieved a variance of 9.17% in contrast to Amendment 5, which split only five counties and resulted in a variance of 10.05%. On September 27, the Republican Caucus of the Tennessee State Senate ("the Republican Caucus") filed a motion to intervene as a Defendant in the matter, which was granted by consent order entered the same day.

The Republican Caucus answered and on November 7 the Republican Caucus and Defendants filed memorandums in opposition to Plaintiffs' motion for summary judgment. In their memorandum, Defendants asserted, in part, that under *Gaffney v. Cummings*, 412 U.S. 735 (1973), a redistricting plan with a population variance over 10% creates a *prima facie* case of discrimination. Defendants further asserted that compliance with the "ten percent rule" does not shield a state from a successful challenge, but that the best redistricting plan must achieve as nearly equal population as practicable. Defendants submitted that the Tennessee Supreme Court's statement in *State ex rel. Lockert v. Crowell* (*Lockert II*), 656 S.W.2d 836 (Tenn. 1983), that a good faith plan resulting in a deviation of up to 14% might be "safe from attack" notwithstanding that a deviation of less than 10% is presumed "*de minimis*" was later negated by *Rural West Tennessee African-American Affairs Council*, 836 F. Supp 447 (W.D. Tenn. 1993). Defendants asserted that the redistricting plan adopted by the General Assembly was *prima facie* constitutional under the Equal Protection Clause, and that Amendment 5 was presumptively unconstitutional. They further asserted that Plaintiffs had failed to carry their burden of proof to demonstrate that the "trade-offs" made by the General Assembly in balancing population equality, minority vote dilution considerations, integrity of political subdivisions and territorial cohesion were unreasonable or irrational.

In its memorandum in opposition to summary judgment, the Republican Caucus examined the history of redistricting case law and asserted that the "10% rule" had been rejected by the Court in *Larios v. Cox*, 300 F. Supp. 1320 (N.D. GA 2004), summarily aff'd, *Cox v. Larios*, 542 U.S. 947 (2004). The Republican Caucus asserted that *Larios* reiterated

the Supreme Court's earlier holding in *Reynolds v. Sims*, 377 U.S. 533, 579 (1964) that "the overriding objective must be substantial equality of population among the various districts." The Republican Caucus also relied on *Rural West Tennessee African-American Affairs Council* for the proposition that Tennessee case law does not support Plaintiffs' assertion that equality of population considerations demanded by the Equal Protection Clause are not of paramount consideration when balancing the state and federal Constitutions. It also asserted that Amendment 5 proposed a variance of -3.52% percent for each of the five districts wholly contained by Shelby County, but created a variance of up to 4.87% for other districts within Western Tennessee. The Republican Caucus asserted that this "systemic regional deviation" was specifically disallowed by *Larios*.

Plaintiffs filed their reply in support of summary judgment on November 14, asserting that Tennessee law required the General Assembly to design state electoral districts that split as few counties as possible while not violating federal law. They asserted that the Tennessee Supreme Court "had given its stamp of approval to plans with a significantly higher deviation that were better compliant [with] state policies of preserving county lines." Plaintiffs asserted they had carried their burden to demonstrate that the redistricting plan violates Article II, Section 6, by dividing more counties than necessary, and that the burden accordingly shifted to Defendants to demonstrate that "the Legislature was justified in passing a reapportionment act which crossed county lines more than necessary." They asserted that Defendants could not demonstrate this under the Tennessee Supreme Court's holding in *Lockert*. They also asserted that Defendants had misrepresented *Rural West Tennessee African-American Affairs Council*. Plaintiffs contended that the court in that case rejected a 14% variance because the plaintiffs had demonstrated that it was possible to split fewer counties and achieve a lower overall deviation, not because a deviation of more than 10% could not be tolerated. Plaintiffs argued that a deviation of 10.05% is Constitutionally acceptable where the plan achieves the legitimate state objective of splitting as few counties as possible.

Following a hearing on December 14, the trial court denied Plaintiffs' motion for summary judgment by order entered December 20, 2012. In its order, the trial court acknowledged that all of the facts recited in Plaintiffs' statement of undisputed facts were, in fact, not disputed. The trial court additionally noted that it also was undisputed that no plans other than SB 1514 were submitted to the General Assembly by the November 1, 2011, deadline; that on January 10, 2012, the Senate Judiciary Committee recommended SB 1514; and that SB 1514 was presented for final consideration by the full Senate on January 13, 2012. The trial court additionally noted the undisputed fact that Senator Kyle introduced Amendment 5 and Amendment 6 to SB 1514 on January 13, 2012; that the Senate voted to adopt the original version of SB 1514 on the same day; that the redistricted plan ultimately was adopted by the House and signed into law by the Governor Haslam; and that Article II,

Section 6, of the Tennessee Constitution prohibits dividing counties when forming senate districts. In its discussion and analysis of the burden of proof, the standard of review, the requirements of the Equal Protection Clause, and Tennessee redistricting law, the trial court adopted the memorandums of Defendants and the Republican Caucus, quoting them extensively. The trial court similarly adopted the reasoning and analysis of the Republican Caucus and, quoting from its memorandum in opposition to summary judgement, determined that because the only plan presented to the General Assembly with an overall deviation of less than 10% was SB 1514, the General Assembly did not act without a rational basis in adopting it. The trial court concluded, "Plaintiffs have failed to meet their burden of proof demonstrating that the trade-offs made by the General Assembly in adopting Senate Bill 1514 (Public Chapter 514) were unreasonable or irrational . . ."

In January 2013, Defendants filed a motion to dismiss for failure to state a claim, asserting that it was entitled to a judgment as a matter of law where the trial court had determined that the redistricting plan was constitutional. The Republican Caucus joined the motion on February 7. In their response in opposition, Plaintiffs asserted that Defendants had not filed a cross-motion for summary judgment and that dismissal was not appropriate notwithstanding the denial of their motion for summary judgment. Relying on their previously filed memorandum in support of summary judgment and the standard applicable to a 12.02 motion to dismiss, Plaintiffs asserted dismissal was not appropriate under the *Lockert* cases.

By final order entered February 19, 2013, the trial court determined that its order denying Plaintiffs' motion for summary judgment disposed of all issues in the matter, and that no claims remained pending. It accordingly dismissed the matter with prejudice. Plaintiffs filed a timely notice of appeal to this Court, and oral argument was heard by the Western Section sitting in Nashville in September 2013.

### *Issues Presented*

Plaintiffs (hereinafter "Appellants") present the following issue for our review, as worded by them:

Whether the Chancery Court erred in granting Defendants' Motion to Dismiss for failure to state a claim upon which relief could be granted, after it had concluded that its denial of Plaintiff's Motion for Summary Judgment resolved all legal issues in this case. The issue in this case is whether Plaintiffs-Appellants satisfied their burden under *State ex rel. Lockert v. Crowell*, 631 S.W.2d 702 (Tenn. 1982) (*Lockert I*) - that is, whether they demonstrated that it was possible to split fewer counties in the State Senate redistricting plan. If so, the burden then rightfully should have shifted to

Defendants-Appellees to demonstrate that each of the additional splits enacted in the plan were necessary under federal law and, in essence, to prove that the 10.05% total variance in Plaintiffs-Appellants demonstrative plan would have been unconstitutional.

### *Standard of Review*

It is well-settled that "[a] motion to dismiss for failure to state a claim for relief challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Stewart v. Schofield*, 368 S.W.3d 457, 462 (Tenn. 2012) (citation omitted). A motion to dismiss for failure to state a claim "admits the truth of the factual allegations in the complaint but asserts that the alleged facts fail to establish a basis for relief." *Id.* When considering a motion to dismiss, the "courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. Additionally, courts must give effect to the substance, rather than the form or terminology of a pleading." *Id.* (citations and internal quotations omitted). We review a trial court's adjudication of a motion to dismiss for failure to state a claim *de novo* without a presumption of correctness. *Id.* at 463.

When a trial court considers matters outside of the pleadings, however, as the trial court did in this case, a motion to dismiss is converted to a motion for summary judgment. *E.g., Adams TV of Memphis v. Com Corp of Tenn.*, 969 S.W.2d 917, 920 (Tenn. Ct. App.1997). We review a trial court's award of summary judgment *de novo* with no presumption of correctness, reviewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted). Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 83 (quoting Tenn. R. Civ. P. 56.04; accord *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000)). The burden of persuasion is on the moving party to demonstrate, by a properly supported motion, that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* (citing see *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

### *Discussion*

Neither a transcript nor statement of the evidence have been transmitted to this Court on appeal, and the parties agree that the material facts of this matter are not disputed. The

issues presented by Appellants, as we perceive them, are 1) whether the trial court erred in determining that the redistricting plan was presumptively constitutional and by failing to shift the burden of proof to Defendants and the Republican Caucus (hereinafter, collectively, "Appellees") to demonstrate that equal protection considerations justified dividing eight counties; 2) whether the trial court erred by determining that, as a matter of law, an overall variance of less than 10% is presumptively constitutional and a variance greater than 10% is *prima facie* unconstitutional; 3) whether the trial court erred by determining that its order denying Appellants' motion for summary judgment resolved all issues in the matter where Appellants did not demonstrate that the Act lacked a rational basis. Appellants urge us to reverse dismissal and remand for further proceedings. Appellees urge us to affirm dismissal on the basis that, as a matter of law, a redistricting plan resulting in a population variance in excess of 10% is *prima facie* unconstitutional.

We additionally note that all parties rely on the trilogy of *Lockert ex rel. Crowell*, 631 S.W.2d 702 (Tenn. 1982) (*Lockert I*); 656 S.W.2d 836 (*Lockert II*); and  729 S.W.2d 88 (Tenn. 1987) (*Lockert III*) in support of their arguments. The parties also rely on numerous Supreme Court and federal appellate and district court cases in support of their arguments. We observe that, subsequent to the *Lockert* trilogy, the courts have addressed the balance of equal protection concerns against other legitimate state interests, including state constitutional prohibitions against dividing counties, with varying outcomes. It is clear, however, that equal protection concerns remain paramount in any redistricting plan. *E.g., Larios v. Cox*, 300 F.Supp.2d 1320, 1337 (N.D. GA 2004) (aff'd *Cox v. Larios*, 542 U.S. 947, 124 S.Ct. 2806 (2004)). It also is clear that, although equal protection concerns are paramount in all redistricting plans, some flexibility is permitted, particularly in state legislative redistricting plans. *Id.* The courts have long held that population deviations are permissible "to further legitimate state interests such as making districts compact and contiguous, respecting political subdivisions, maintaining cores of prior districts, and avoiding incumbent pairings." *Id.* However, the state must demonstrate that "'the population deviations in its plan were necessary to achieve some legitimate state objective.'" *Tennant v. Jefferson County Commission*, 133 S.Ct. 3, 7 (Sept. 25, 2012) (quoting *Karcher v. Daggett*, 462 U.S. 725, 740 (1983). In addition to balancing legitimate state interests against securing minimal population variances, redistricting plans may not violate the provisions of the Voting Rights Act, 42 U.S.C. § 1973. *E.g., Perry v. Perez*, 132 S.Ct. 934 (Jan. 20, 2012).

### Burden of Proof

The Tennessee Supreme Court has emphasized that the courts must exercise "extraordinary caution" when deciding whether to declare a statute facially unconstitutional so as "to avoid short-circuiting the democratic process by preventing laws embodying the

will of the people, as expressed through their elected representatives, from being implemented in a manner consistent with the federal and state constitutions." *Waters v. Farr*, 291 S.W.3d 873, 916 (Tenn. 2009) (citing *see Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. 442, ——, 128 S.Ct. 1184, 1191, 170 L.Ed.2d 151 (2008)). Thus, "'[a] facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully since the challenger must establish that no set of circumstances exist under which the Act would be valid.'" *Davis-Kidd Booksellers, Inc. V. McWherter*, 866 S.W.2d 520, 525 (Tenn. 1993) (quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987)). Consistent with this standard, the *Lockert* court observed, "'[t]he burden is on one attacking an act to establish its invalidity.'" *Lockert I*, 631 S.W.2d at 710 (quoting, *Smith v. Craddick*, 471 S.W.2d 375, 378 (Tex. 1971)). The *Lockert* court held that after the plaintiffs in that case had demonstrated that the redistricting act violated the state constitutional prohibition against crossing county lines, "[t]he burden . . . shifted to the defendants to show that the Legislature was justified in passing a reapportionment act which crossed county lines." *Id*. at 714. The *Lockert* court emphasized, however, "[t]he variance should be as low as possible, because equality of population is still the principal consideration." *Id*. at 714.

Appellees' argument here, as we understand it, is that Appellees carried their burden to justify crossing county lines where a population variance greater than 10% has been determined to be *prima facie* unconstitutional under the Equal Protection Clause, where the Act results in a variance of less than 10%, and where the redistricting plan proposed by Appellants results in a variance of greater than 10%. Appellees assert that, because they demonstrated that the Act was not *prima facie* unconstitutional for the purposes of federal equal protection principles, the burden shifted back to Appellants to demonstrate that it was possible to split fewer county lines *and* achieve a deviation of less than 10%.

Consistent with *Lockert*, after Appellants demonstrated that the Act violated the Tennessee Constitution by crossing county lines, the burden shifted to Appellees to demonstrate that the divisions "'"were excused by the requirements of equal representation."'" *Id*. at 710 (quoting *Smith v. Craddick*, 471 S.W.2d 375, 378 (Tex. 1971)). Additionally, although the *Lockert* court noted that no *prima facie* showing of unconstitutionality existed when a plan achieves a variance of less than 10%, it also noted that "'[w]hat is marginally permissible in one State may be unsatisfactory in another, depending on the particular circumstances of the case.'" *Lockert I* at 707 (quoting *Reynolds v. Sims*, 377 U.S. 533, 578, 84 S.Ct. 1362,1930 (1963)). Additionally, the *Lockert* court contrasted the "rule of thumb" that variances of less than 10% "need not be justified absent a showing of invidious discrimination" against the court's observation that greater variances may be considered constitutional if justified by the state. *Id.* Since *Lockert* was decided, however, the Supreme Court has rejected the concept of a safe harbor for deviations less than 10%. *Cox v. Larios*,

542 U.S. 947, 949, 124 S.Ct. 2806, 2808 (2004)(Stevens, J., concurring). Population deviations may be permitted only when "'incident to the effectuation of a rational state policy,'" but equal protection considerations are paramount. *Id*. (quoting *Reynolds*. 377 U.S. at 579, 84 S.Ct. 1362).

In the current case, it is undisputed that, in addition to Amendment 5, the General Assembly also considered a plan that achieved a population deviation of 0% but crossed 24 county lines. This is not the plan that Appellants champion, although it splits fewer counties than the "upper limit" of 30 envisioned by the court in *Lockert II*. *See Lockert II*, 656 S.W.2d 836, 844 (Tenn. 1983). Appellants did not challenge the Act on the basis that it violates equal protection principles, but on the ground that it violates Tennessee Constitutional prohibitions against splitting more counties than necessary. As Appellants assert, the *Lockert II* court rejected the argument that the courts should "sanction a single county line violation not shown to be necessary to avoid a breach of federal constitutional requirements." *Lockert II*, 656 S.W.2d at 839. Additionally, as further discussed below, a redistricting plan achieving a variance of less than 10% is not *per se* constitutional. Rather, equal protection considerations are primary and there is no "safe harbor" for plans achieving population variances of less than 10%.

After Appellants demonstrated that the Act violates Tennessee's constitutional prohibition against crossing county lines, the burden shifted to Appellees to demonstrate that the Act fulfills the requirements of equal protection while fulfilling, insofar as possible, state constitutional requirements. In its December 2012 order denying Appellants' motion for summary judgment, the trial court stated: "Plaintiffs have failed to meet their burden of proof of demonstrating that the trade-offs made by the General Assembly in adopting Senate Bill 1514 (Public Chapter 514) were unreasonable or irrational . . . ." To the extent to which the trial court held that the burden was not on Appellees to demonstrate that crossing county lines was justified by equal protection considerations, we reverse. To the extent to which the trial court held that Appellees carried their burden, we affirm.

### *Prima Facie Constitutionality*

We next turn to whether the trial court erred by determining that the Act is constitutional on the sole basis that it achieved a population variance of less than 10%. As Appellees assert, a total variance from the ideal district size exceeding 10% establishes a *prima facie* case that the redistricting plan violates the Equal Protection Clause. *Voinovich v. Quilter*, 507 US 146, 161, 113 S.Ct. 1149, 1159 (Tenn. 1993). However, the establishment of a *prima facie* case places the burden on the state to justify legitimate reasons for the deviation. *Id*. It does not render the Act unconstitutional *per se*. The Supreme Court has

indicated that slightly greater variances may be tolerated in state legislative districts than in the context of Congressional districts. *Karcher v. Daggett*, 462 U.S. 725, 732-33, 103 S.Ct. 2653, 2659 (1983). On the other hand, in cases decided subsequent to *Lockert*, the Court has rejected the argument that a deviation of less than 10% is *di minimis*. There is no safe harbor. *Cox v. Larios*, 542 US at 949 124 S.Ct. at 2808. It appears that a deviation greater than 10% may be justified in some limited circumstances, while a deviation of less than 10% may not be justified in others. In the context of actions challenging redistricting plans on the basis of population variations, the Supreme Court has observed that, after the parties challenging the plan demonstrate that population differences "could practically be avoided," the burden shifts to the State to demonstrate that the differences "were necessary to achieve some legitimate state objective." *Tennant v. Jefferson County Com'n*, 133 S.Ct. 3, 5 (Sept. 25, 2012). In this case, of course, Appellants do not challenge the Act on the basis that it results in too great a population variance, but on the grounds that it crosses more county lines than necessary. As discussed above, Appellees carried the burden to demonstrate that crossing county lines was necessary in consideration of equal protection requirements.

We think the *Tennant* Court's observation that the State carries a "flexible" burden to demonstrate that it achieved the appropriate balance is applicable here. Because there is no safe harbor with respect to population variances, and because Tennessee's Constitution prohibits crossing county lines, Appellees in this case were not entitled to a judgment as a matter of law merely on the ground that the Act did not exceed an overall variance greater than 10%. On the other hand, because variations in excess of 10% are *prima facie* evidence that a redistricting act violates equal protection principles, had the General Assembly adopted Amendment 5 it would have carried the burden to demonstrate that a deviation of more than 10% was not discriminatory. That the Act is not *prima facie* unconstitutional does not render it constitutional *per se*, however. To the extent that the trial court held otherwise, we reverse.

### *Constitutionality of the Act*

We turn finally to the whether the trial court erred by entering judgment in favor of Appellees. As noted above, because the trial court clearly considered matters outside the pleadings, **Appellees'** motion to dismiss was converted to a motion for summary judgment. Although Appellants urge us to remand this mater for further proceedings, the facts of this matter are not in dispute, the record contains numerous affidavits, memorandums and statistical materials offered by both parties in support of their respective positions, and we see no purpose in remanding this matter where the question presented by this lawsuit is whether the Act is unconstitutional, as a matter of law, in light of the undisputed facts. An appellate court may affirm summary judgment on different grounds. *White v. Empire Exp., Inc.*, 395 S.W.3d 696, 717 (Tenn. Ct. App. 2012)(citation omitted). We accordingly turn to

whether, based on the undisputed facts, the Act is constitutional.

We begin our discussion of this issue with several observations. First, we note that, throughout the proceedings in the trial court, Appellants urged the trial court to declare the redistricting plan unconstitutional on the basis that Amendment 5 offered a preferable plan because it split three fewer counties notwithstanding an overall variance of 10.05%. The basis of Appellants' argument, as we understand it, is that Amendment 5 offered a plan that would have been more consistent with Article II, Section 6, of the Tennessee Constitution. Appellants did not contend that the Act adopted by the General Assembly violates equal protection principles. On the contrary, it is not disputed that the Act achieves a variance that is .88% less than the variance in the plan proposed by Appellants. Second, we note that the exhibits and affidavits attached to the pleadings focused primarily on Shelby County, the county in which all Appellants are registered voters. In their complaint, Appellants asserted that three of the five state senate districts previously apportioned to Shelby County were African-American majority, and it is undisputed that part of Shelby County was included in a sixth district that also included Dyer County and Lauderdale County. Although Mr. Hardaway stated in an affidavit attached to Appellant's motion for summary judgment that "the split in the current Senate plan . . . has had a detrimental effect on the voters in Shelby County," Appellants did not allege that the plan is racially discriminatory, and the undisputed evidence in the record reflects that three of the districts wholly contained by Shelby County are minority majority districts. Third, we note that Appellants asserted in their reply to Appellees' motion in opposition to summary judgment that the General Assembly did not make a good faith effort to adopt a plan that crossed fewer county lines, but did not allege any particular improper or "bad faith" motivation. Rather, their entire argument in this case is that the Act is unconstitutional under *Lockert* because it splits more counties than absolutely necessary, and that Amendment 5 proposed a superior redistricting plan. Fifth, the General Assembly also was presented with Amendment 6, an alternate plan that achieved a variance of 0% but split 24 counties. Sixth, we note that no plan has been advanced that achieves a deviation of less than 9.17% and simultaneously splits fewer than 8 counties, and no plan was offered that split no counties.

We additionally note that, although Amendment 5 purports to split only five counties - Carter, Davidson, Hamilton, Knox, Rutherford - it splits Carter County twice, thus resulting in six crossed county lines. It is not disputed that the Act results in a deviation of 2.60% to 2.84% in the four districts containing only Shelby County, and a deviation of 3.20% in District 32, which includes part of Shelby County and Tipton County; that Amendment 5 proposed an average deviation of -3.52% for five districts composed entirely of Shelby County; or that the Act achieves a mean deviation of 2.52% while Amendment 5 proposes a mean deviation of 3.04%. Appellants do not dispute that the Act results in a deviation of -2.83% to .80% in the remaining West Tennessee districts, while Amendment 5 results in a

variance of 1.85% to 4.87% in those districts. It also is undisputed that 31 of the 33 Senate Districts are within 4% of the ideal population size in the redistricting plan adopted by the General Assembly; that the deviation in the Act ranges from -4.74 to 4.42; and that the deviation in Amendment 5 ranges from -5.18 to 4.87.

The courts have consistently recognized that legislative reapportionment is primarily a matter for legislative determination, and that judicial intervention is appropriate only when the legislature fails to reapportion according to constitutional requisites. *Voinovich v. Quilter*, 507 U.S. 146, 156-57, 113 S.Ct. 1149, 1156-57 (1993); *Reynolds v. Sims*, 377 U.S. 533, 586, 84 S.Ct. 1362, 1394 (1964); *Lincoln County v. Crowell*, 701 S.W.2d 602, 604 (Tenn. 1985). Although population deviations will be permitted when "necessary to achieve some legitimate state objective," *Karcher*, 462 U.S. at 740, 103 S.Ct. 2653, those objectives must yield to equal population principles. *Cox v. Larios*, 542 U.S. at 949. The states are required to "'make an honest and good faith effort to construct districts . . . as nearly of equal population as is practicable.'" *Rural West Tennessee African-American Affairs Council v. McWherter*, 836 F.Supp. 447, 451 (W.D. Tenn 1993). "[T]he state constitutional prohibitions against the division of counties in establishing legislative districts must yield to federal constitutional requirements under the Equal Protection clause." *Lincoln County v. Crowell*, 701 S.W.2d 602, 603 (Tenn. 1985). Further, "the General Assembly has principal responsibility and . . . primary authority" for legislative redistricting, and in the absences of equal protection violations, bad faith or improper motives, the courts will not "set aside individual district lines on the ground that they theoretically might have been drawn more perfectly." *Id* at 604. A redistricting plan will not be set aside on constitutional grounds merely because a slightly "better" plan can be devised when the plan devised by the General Assembly yields to equal protection principles and makes an honest effort to balance legitimate state objectives against those principles. *Rural West Tennessee*, 836 F.Supp at 451. Additionally, as the *Lockert III* court noted, and as the evidence in this record demonstrates, altering the redistricting plan is a complex process. *See Lockert III*, 729 S.W.2d 88, 90 (Tenn. 1987). Amendment 5 alters not only the configuration of Shelby County, Sevier County and Bradley County, but alters many of the county groupings contained in the senate districts established by the Act.

In this case, the redistricting plan adopted by the General Assembly achieved population equality superior to the plan urged by Appellants, did not divide any county more than once, achieved greater regional population equality, and crossed eight county lines in contrast to the six crossed lines advocated by Appellants. The Supreme Court opined in *Cox v. Larios*: "the equal-population principle remains the only clear limitation on improper districting practices, and we must be careful not to dilute its strength." *Cox v. Larios*, 542 U.S. at 949-50, 124 S.Ct 2808 (Stevens, J. concurring). Appellants alleged no improper motive or bad faith, other than contending that the General Assembly did not make a good

faith effort to cross two fewer county lines than achieved by Amendment 5. The district maps illustrating the composition of the 33 senate districts under the Act and under Amendment 5 reflect the General Assembly's stated intent to cross as few county lines as possible while maintaining regional integrity and as low a population variance as possible consistent with the Equal Protection Clause and the Tennessee Constitution. The facts are not disputed, and Appellees have carried their burden to demonstrate that crossing county lines was necessary to best achieve population equality while simultaneously crossing far fewer county lines than the upper limit of 30 suggested by the *Lockert* court.

### *Holding*

Defendants/Appellees carried their burden to demonstrate that they were entitled to judgment as a matter of law in light of the undisputed facts. We accordingly affirm judgment in favor of Defendants/Appellees. Costs of this appeal are taxed to the Appellants, Kermit L. Moore, Jr., Vanecia Kimbrew, Felecia D. Boyd, Regenna Williams, Roshun Austin, L. LaSimba M. Gray, Jr., and G.A. Hardaway, Sr., and their surety, for which execution may issue if necessary. This matter is remanded to the trial court for enforcement of the judgment and the collection of costs.

_____
DAVID R. FARMER, JUDGE