# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
January 27, 2015 Session

## SHARON M. SMITH, ET AL. V. READ HAUCK, ET AL.

### Appeal from the Circuit Court for Davidson County
### No. 13C2364    Amanda Jane McClendon, Judge

_____

### No. M2014-01383-COA-R3-CV – Filed March 25, 2015

_____

The trial court granted Defendant/Appellee's motion to dismiss based upon expiration of the applicable statute of limitations and made its judgment final pursuant to Tennessee Rule of Civil Procedure 54.02. Because we find that the trial court considered matters outside the pleadings in ruling on Defendant/Appellee's motion to dismiss we converted it to a motion for summary judgment. We reverse the judgment of the trial court and remand for further proceedings.

### Tenn R. App. P. 3 Appeal; Judgment of the Circuit Court Reversed and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON J., and KENNY ARMSTRONG, J., joined.

George R. Fusner, Jr., Brentwood, Tennessee, for the appellants, Sharon M. Smith, Jennifer A. Mortimer and James L. Mortimer.

James P. Catalano, Nashville, Tennessee, for the appellee, St. Jude Medical S.C., Inc.

### OPINION

The facts relevant to our disposition of the issues presented on appeal in this matter are not disputed. On June 25, 2012, a vehicle operated by Plaintiff Sharon M. Smith ("Ms. Smith") and a vehicle operated by Defendant Read Hauck ("Mr. Hauck") collided. Plaintiff Jennifer A. Mortimer ("Ms. Mortimer") was a passenger in Ms. Smith's vehicle at the time of the accident.

On June 7, 2013, Ms. Smith, Ms. Mortimer, and James L. Mortimer ("Mr. Mortimer"; collectively, "Plaintiffs") filed an action for damages against Mr. Hauck in the

Circuit Court for Davidson County. In their complaint, Plaintiffs alleged that Ms. Smith's vehicle was stopped on an exit ramp off I-40 when it was struck from the rear by Mr. Hauck's vehicle. Ms. Smith and Ms. Mortimer sought compensatory damages for injuries allegedly caused by Mr. Hauck's alleged negligence and negligence per se and Mr. Mortimer's alleged loss of consortium damages arising from injuries sustained by his wife. Plaintiffs prayed for damages in excess of $25,000 each. Mr. Hauck answered on August 26, 2013, generally denying liability and asserting the doctrine of comparative fault against Ms. Smith and Ms. Mortimer. He additionally asserted that Plaintiffs' complaint failed to state a claim upon which relief could be granted.

On August 30, Plaintiffs served their first set of interrogatories and request for production of documents on Mr. Hauck. Plaintiffs' interrogatories, in relevant part, sought information regarding Mr. Hauck's purpose for traveling at the time of the collision and information regarding his employer. After Mr. Hauck's responses were approximately six weeks past due, Plaintiffs filed a motion to compel on November 18, 2013. Mr. Hauck responded to the interrogatories on December 4, 2013, and stated that he was working for St. Jude Medical S.C., Inc. ("St. Jude Medical") when the collision occurred. He also stated that, at the time of the accident, he was traveling to St. Thomas Hospital to participate in surgery as part of his employment with St. Jude Medical. On that same day, December 4, 2013, Plaintiffs filed a motion to amend their complaint to add St. Jude Medical as a Defendant. The trial court granted the motion, and Plaintiffs filed their amended complaint on December 20, 2013. In their amended complaint, Plaintiffs alleged that Mr. Hauck was working in the course and scope of his employment with St. Jude Medical when the accident occurred and that St. Jude Medical was liable for damages under the doctrine of *respondeat superior*.

On February 3, 2014, St. Jude Medical filed a motion to dismiss for failure to state a claim pursuant to Tennessee Rule of Civil Procedure 12.02(6). In their motion, St. Jude Medical asserted that Plaintiffs' action was barred by the one-year statute of limitations set forth in Tennessee Code Annotated § 28-3-104(a)(1). Plaintiffs responded in March 2014, asserting that the statute of limitations was tolled by the discovery rule because "Plaintiffs had no idea that Defendant Hauck was acting within the scope of his employment until the information became known in written discovery." Plaintiffs further asserted, "Defendant Hauck likewise failed to state in his Answer that he was acting within the scope of his employment nor was there any indication of such in any accident reports or other documents available to Plaintiffs prior to filing the lawsuit."

In April 2014, the trial court granted Plaintiffs'second motion to amend their complaint. In their April 23, 2014 second amended and restated complaint (hereinafter, "complaint"), Plaintiffs specifically asserted that they "had no knowledge that the

Defendant, Read Hauck, was working in the scope and course of business of his employer, the Defendant, St. Jude Medical S.C., Inc. until after the Defendant, Mr. Hauck, filed his interrogatory answers in December of 2013." They additionally stated, "Further, the Plaintiffs were given no indication of Mr. Hauck's employment until the interrogatory answers were received by their counsel on December 4, 2013." They reasserted their claim against Mr. Hauck, alleged that St. Jude Medical was vicariously liable for damages under the doctrine of *respondeat superior*, and demanded a trial by jury.

The trial court granted St. Jude Medical's motion to dismiss by order entered April 25, 2014. Plaintiffs filed a motion for interlocutory appeal in May, which the trial court denied in July 2014. By order entered July 2, 2014, the trial court made its April 25 order dismissing St. Jude Medical final pursuant to Tennessee Rule of Civil Procedure 54.02, and Plaintiffs filed a timely notice of appeal to this Court.

## Issues Presented

Plaintiffs present the following issues for our review, as they state them:

1) Whether the trial court erroneously dismissed the foregoing personal injury lawsuit based upon the statute of limitations[.]

2) Whether the Discovery Rule tolled the statute of limitations[.]

3) Whether Defendants were guilty of fraudulent concealment[.]

## Standard of Review

When considering a motion to dismiss for failure to state a claim under Rule 12.02(6) of the Tennessee Rules of Civil Procedure, the trial court must determine whether the pleadings state a claim upon which relief may be granted. Tenn. R. Civ. P. 12.02(6); *Cullum v. McCool*, 432 S.W.3d 829, 832 (Tenn. 2013). The motion tests "only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). Therefore, when reviewing a motion to dismiss, we must accept the facts alleged in the complaint as true and construe them in favor of the plaintiff. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012). The trial court should grant a motion to dismiss only if it appears that the plaintiff cannot establish any facts in support of the claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). We review a trial court's award of a motion to dismiss *de novo* with no presumption of correctness. *Myers*, 382 S.W.3d at 308.

3

When the trial court considers matters outside of the pleadings, however, "a motion to dismiss is converted to a motion for summary judgment." *Moore v. State*, 436 S.W.3d 775, 783 (Tenn. Ct. App. 2014) (citation omitted). Like our review of a trial court's order granting a motion to dismiss, our review of a trial court's award of summary judgment is *de novo* with no presumption of correctness. *Id.* (citation omitted). We must "review[] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Id.* (citation omitted). It is well-settled that summary judgment may be granted only if the moving party carries his burden to demonstrate that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citations omitted).

As the trial court noted in its April 2014 memorandum opinion in this case, Plaintiffs relied on Mr. Hauck's discovery responses in support of their assertion that the discovery rule operated to toll the statute of limitations with respect to their claim against St. Jude Medical. In its memorandum opinion, the trial court stated:

> On August 30, 2013 Plaintiffs served Plaintiff's First Set of Interrogatories and Request for Product of Documents to Mr. Hauck. Contained within those requests were interrogatory numbers 16 and 17, which sought information regarding any potential employer of Mr. Hauck and his purpose for travelling (sic) at the location of the wreck (Plaintiff's Response at 3). After a period of nearly three months with no response, Plaintiffs then filed a Motion to Compel on November 18, 2013. In his December 4, 2013 discovery response Mr. Hauck stated that he was working for St. Jude at the time of the accident. He also stated that he was travelling (sic) to St. Thomas hospital to participate in a pacemaker implant surgery as part of his employment with St. Jude.

We observe that, in their response to St. Jude Medical's motion to dismiss, Plaintiffs stated:

> Thereafter, the Plaintiffs[] on August 30, 2013 served Plaintiffs' First Set of Interrogatories and Request for Production of Documents to Defendant, Read Hauck (see attached Affidavit of George R. Fusner, Jr. paragraph 3). Contained within those requests were interrogatory numbers 16 and 17 which sought information concerning the employer of Mr. Hauck at the time of the wreck and the reason that he was traveling at the location of the wreck (see Affidavit of George R. Fusner, Jr. paragraph 6).

4

That only after Plaintiffs' Motion to Compel was filed did the Defendant, Read Hauck, furnish responses to the discovery which was received by counsel for the Plaintiffs on December 4, 2013 (see Affidavit of George R. Fusner, Jr. paragraph 5). That in answer to interrogatories 16 and 17 the Defendant stated as follows:

16. At the time and place of the incident was the Defendant, Read Hauck, on the business of his employer. If so, identify the employer.

**ANSWER: Defendant states that at the time of the accident he was working for St. Jude Medical.**

17. Why was the Defendant, Read Hauck, traveling on 1-40 East towards the exit ramp for West End Avenue the day of the incident.

**ANSWER: Defendant states that he was traveling to St. Thomas Hospital to participate in a pacemaker implant surgery as part of his employment with St. Jude Medical.**

As a result thereof, the Plaintiffs had for the first time knowledge that at the time of the wreck described in paragraphs 3 and 4 of the Complaint that Mr. Hauck was working for the Defendant, St. Jude Medical S.C., Inc. That as such, St. Jude Medical S.C., Inc. as employer is responsible for all injuries and damages caused by the wrongful actions of Mr. Hauck under the doctrine of respondeat superior.

As noted above, the trial court granted St. Jude Medical's motion to dismiss in its final order. Further, we observe that it is not clear from the record that the trial court considered filings other than Plaintiffs' complaint, St. Jude Medical's motion to dismiss, and Plaintiffs' response to the motion when it adjudicated the motion. We also observe, however, that Plaintiffs not only set-out the factual information provided by Mr. Hauck in their response to St. Jude Medical's motion, but incorporated *verbatim* a portion of their interrogatories and Mr. Hauck's answers into their response. Therefore, although discovery materials were not attached to a pleading or separately filed for the trial court's consideration, they nevertheless were submitted to and considered by the trial court where they were incorporated verbatim, in relevant part, directly into Plaintiffs' response. Accordingly, the trial court's order, as we perceive it, is properly construed as one

5

awarding summary judgment in favor of St. Jude Medical.[1]

## Discussion

There is no dispute that Plaintiffs filed their claim against St. Jude Medical after the applicable one-year limitations period prescribed in Tennessee Code Annotated § 28-3-104(a)(1) had expired. The issues in this case, however, are 1) whether, as a matter of law, the discovery rule is applicable to a claim based on vicarious liability under the doctrine of *respondeat superior*; 2) if the discovery rule is applicable, whether it operates to toll the limitations period under the facts of this case; and 3) whether the doctrine of fraudulent concealment operates to toll the limitations period in this matter.

In its April 2014 order dismissing St. Jude Medical, the trial court determined that the discovery rule was applicable to Plaintiffs' action but that, although Plaintiffs submitted that they "'had absolutely no way of knowing that Defendant Hauck was acting with[in] the scope of his employment until written discovery responses were produced'" in December 2013, Plaintiffs failed to fulfill their duty to exercise reasonable diligence "to discover the existence and identity of St. Jude [Medical]." The trial court observed that Plaintiffs filed their initial complaint on June 7, 2013, shortly before expiration of the limitations period, and did not serve discovery requests on Mr. Hauck until August 30, 2013, two months beyond the statutory limitations period. The trial court accordingly determined that, even assuming delay by Mr. Hauck in responding to Plaintiffs' discovery requests, "that delay did not prevent the Plaintiffs from discovering St. Jude[] [Medical's] identity before the statute of limitations expired on June 26, 2013." The trial court determined that "Plaintiffs [had] not demonstrated that they exercised reasonable care and due diligence in discover[ing] the identity of St. Jude [Medical] during the limitations period." We accordingly turn first to whether the discovery rule is applicable to a claim based on vicarious liability under the doctrine of *respondeat superior*.

## Applicability of the Discovery Rule to Actions Asserting Vicarious Liability

It is well-established that the discovery rule, where applicable, "is an equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in

---

[1]Regardless of whether the trial court's order in this case should properly be reviewed as one granting a motion to dismiss or as an award of summary judgment, the trial court determined that St. Jude Medical was entitled to a judgment as a matter of law based on the court's understanding of the discovery rule. The facts relevant to our disposition on appeal are not disputed, and our standard of review in this case is the same regardless of which motion was appropriate. *See Rajvongs v. Wright*, No. M2011–01889–COA–R9–CV, 2012 WL 2308563, at *3 n.3 (Tenn. Ct. App. June 18, 2012), *aff'd,* 432 S.W.3d 808 (Tenn. 2013).

the exercise of reasonable care and diligence, should know that an injury has been sustained." *Pero's Steak and Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002) (citations omitted). It is based on "reason, logic and fundamental fairness." *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 489 (Tenn.1975). The purpose of the discovery rule is to prevent the inequitable result of "strict application" of the statute of limitations, which would require plaintiffs "to vindicate a non-existent wrong, at a time when the injury is unknown and unknowable." *Pero's*, 90 S.W.3d at 621 (quoting *Teeters v. Curry*, 518 S.W.2d 512, 515 (Tenn. 1974))

One year after first applying the discovery rule to a medical malpractice case in *Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn. 1974), our supreme court "extended the rule to all tort actions predicated on negligence, strict liability, or misrepresentation." *Doe v. Coffee County Bd. of Educ.*, 852 S.W.2d 889, 904 (Tenn. Ct. App. 1992) (citing *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn. 1975)). In *McCullough v. Johnson City Emergency Physicians*, we implicitly recognized the applicability of the discovery rule to claims based on the doctrine of respondeat superior. *McCullough v. Johnson City Emergency Physicians, P.C.*, 106 S.W.3d 36 (Tenn. Ct. App. 2002) (perm. app. denied May 27, 2003). The plaintiffs in *McCullough* amended their complaint to add a medical practice, Cardiology Consultants of Johnson City, P.C. ("Cardiology Consultants"), as a defendant. Plaintiffs asserted that Cardiology Consultants was vicariously liable for the negligence of its employee physician after deposing another physician practicing with the group. *Id.* at 40. We held that the statute of limitations applicable to the plaintiffs' claim against Cardiology Consultants was not tolled by operation of the discovery rule because, although plaintiffs were unaware of which physician performed the allegedly negligent act, they knew that the act was performed by *a* physician employed by the practice. *Id.* at 44.

Although the issue of whether the discovery rule may be invoked in a claim based on vicarious liability under the doctrine of *respondeat superior* was not specifically addressed in *McCullough*, the Eastern Section of this Court has held that the rule may be applied to the discovery of vicariously liable defendants. *Grindstaff v. Bowman*, No. E2007-00135-COA-R3-CV, 2008 WL 2219274, at *6 (Tenn. Ct. App. May 29, 2008) (no perm. app. filed). Noting the supreme court's statement in *Foster v. Harris* that the limitations period does not run until the plaintiff "discovered, or reasonably should have discovered . . . the identity of the defendant who breached the duty[,]" the *Grindstaff* court opined that "[t]his broad language would include a defendant who is vicariously liable." *Id.* at *6 (citing *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982)). We agree and, accordingly, turn to the trial court's determination that the discovery rule did not operate to toll the limitations period in this case.

**Application of the Discovery Rule and Award of Summary Judgment**

As noted above, the trial court determined that the discovery rule did not operate to toll the statute of limitations in this case because Plaintiffs failed to exercise reasonable care and due diligence to discover the identity of St. Jude Medical before the statute of limitations had expired. Plaintiffs asserted in the trial court, and contend on appeal, that they "had no knowledge that [Mr. Hauck] was working in the scope and course of business of his employer . . . until after . . . Mr. Hauck[] filed his interrogatory answers in December of 2013." They further contend that "they were given no indication of Mr. Hauck's employment until the interrogatory answers were received by their counsel on December 4, 2013." In their response to St. Jude Medical's motion to dismiss, Plaintiffs stated:

> Plaintiffs had no idea that Defendant Hauck was acting within the scope of his employment until the information became known in written discovery. Defendant Hauck likewise failed to state in his Answer that he was acting within the scope of his employment nor was there any indication of such in any accident reports or other documents available to Plaintiffs prior to filing the lawsuit.

Plaintiffs additionally asserted that Mr. Hauck clearly did not want to provide his responses to their discovery requests where he "did everything he could to keep the information a secret to the detriment of Plaintiffs but to the benefit of his employer." They submitted that there was nothing on Mr. Hauck's vehicle to indicate that he was traveling within the scope of his employment with St. Jude Medical when the collision occurred and that Mr. Hauck did not indicate to Plaintiffs or police that he was traveling in the course of his employment. St. Jude Medical does not dispute these assertions but, in its brief to this Court, contends that "there is no basis in this case that [Mr.] Hauck was acting in the course of his employment[]" when the collision occurred. It submits that Plaintiffs' allegation of vicarious liability is based on "pure conjecture[,]" and that "[t]he interrogatories simply show that [Mr.] Hauck was employed by St. Jude [Medical] and on his way to work."

It is well-settled that the discovery rule "does not . . . toll the statute of limitations until the plaintiff actually knows that he or she has a cause of action. The plaintiff is deemed to have discovered the right of action when the plaintiff becomes aware of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of the defendant's wrongful conduct." *Pero's*, 90 S.W.3d at 621 (quoting *Teeters v. Curry*, 518 S.W.2d 512, 515 (Tenn. 1974)) Inquiry notice and constructive notice "charge[] a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436,

459 (Tenn. 2012) (quoting *Sherrill v. Souder*, 325 S.W.3d 584, 593 n.7 (Tenn. 2010) (quoting *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 461 (Iowa 2008))). The statutory limitations period begins to run when "a plaintiff gains information sufficient to alert a reasonable person of the need to investigate the injury[.]" *Id.* (quoting *id.* (quoting *id.*)) (internal quotation marks omitted).

Constructive notice is notice that is "implied or imputed by operation of law[.]" *Blevins v. Johnson County*, 746 S.W.2d 678, 683 (Tenn. 1988). It arises "from the existence of facts and circumstances that a party [has] a duty to take notice of[.]" *Black's Law Dictionary* 1227 (10th ed. 2014). Constructive notice is "presumed by law to have been acquired by a person and thus imputed to that person." *Id.* It is sometimes referred to as "legal notice." *Id.* Inquiry notice, as it is considered in Tennessee, "is a variation of actual notice." *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 485 (Tenn. 2012). It "occup[ies] a middle ground between constructive notice and actual notice[.]" *Blevins,* 746 S.W.2d at 683. Inquiry notice is found when a person has "notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and good faith." *Id.* (quoting *City Finance Co. v. Perry*, 257 S.W.2d 1, 2 (Tenn. 1953)) (internal quotation marks omitted).

When the undisputed facts establish a statute of limitations defense, as they do here, the burden shifts to the plaintiff "to articulate at least a colorable basis for concluding that the statute of limitations has not run on his claims" under an equitable doctrine such as the discovery rule. *Redwing*, 363 S.W.3d at 465. The question of whether a plaintiff exercised reasonable care and diligence to discover his claims generally is a factual question for the finder of fact. *Id.* at 466. Dismissal of a complaint for the failure to exercise reasonable care and diligence to discover injury as a result of a defendant's wrongful conduct is appropriate only "'where the undisputed facts demonstrate that no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that he or she was injured as a result of . . . [that] conduct.'" *Young ex rel. Young v. Kennedy*, 429 S.W.3d 536, 557 (Tenn. Ct. App. 2013) (quoting *Schmank v. Sonic Automotive, Inc*, No. E2007-01857-COA-R3-CV, 2008 WL 2078076, at *3 (Tenn. Ct. App. May 16, 2008)). "This is true . . . regardless of whether the plaintiff seeks to have the statute of limitations tolled for thirty days or . . . for . . . thirty years." *Redwing v. Catholic Bishop for Diocese of Memphis*, No. W2009-00986-COA-R10-CV, 2010 WL 2106222, at *10 (Tenn. Ct. App. May 27, 2010) (Kirby, J., dissenting) rev'd in part and aff'd in part, 363 S.W.3d 436 (Tenn. 2012). "'[W]here the resolution of the issue depends upon the question of whether due diligence was exercised under the circumstances, and where differing inferences might reasonably be drawn from the uncontroverted facts, the issue is not appropriate for summary judgment.'" *Sherrill v. Souder*, 325 S.W.3d 584, 597 (Tenn. 2010) (quoting *Hathaway v. Middle Tenn. Anesthesiology*, P.C., 724 S.W.2d 355, 360 (Tenn. Ct. App.1986)).

In their brief, Plaintiffs rely on *Foster v. Harris*, 633 S.W.2d 304 (Tenn. 1982), and *Hathaway v. Middle Tennessee Anesthesiology, P. C.*, 724 S.W.2d 355 (Tenn. Ct. App. 1986), for the proposition that the discovery rule tolls the statute of limitations "until the plaintiff discovers the identity of the tortfeasor or the source of the injury." The initial question addressed "[i]n the continuing saga of when the statute of limitations begins to run in tort cases[]" by the *Foster* court was whether the plaintiff discovered his injury upon being diagnosed with serum hepatitis or "upon discovery that the source of the disease was a negligent act" of plaintiff's dentist. *Foster v. Harris*, 633 S.W.2d 304, 304-305 (Tenn. 1982). The *Foster* court held that the plaintiff discovered his injury when he discovered that his dentist's negligence was the source of his disease and that the statute of limitations accordingly was triggered when the negligent act was known. *Id.* at 305. The *Foster* court secondly addressed whether, assuming the plaintiff discovered his injury upon diagnosis of his disease, "the statute of limitations began to run when neither the existence of nor the identity of a tort feasor was known to plaintiff[.]" *Id.* The court answered the second question in the negative. *Id.*

*Hathaway* was a wrongful death action brought by decedent's son in which the plaintiff/son alleged that his father died as a result of the negligent administration of oxygen during a surgical procedure. *Hathaway v. Middle Tenn. Anesthesiology, P. C.*, 724 S.W.2d 355, 356 (Tenn. Ct. App. 1986). The only issue on appeal in *Hathaway* was whether the trial court erred by dismissing the matter based upon the statute of limitations. *Id.* at 357. In determining whether the discovery rule was applicable to the action, we held that "'discovery' means the discovery of the existence of a right of action, that is, facts which would support an action for tort against the tortfeasor. Such facts include not only the existence of an injury, but the tortious origin of the injury." *Id.* at 359. We additionally held that whether the plaintiff exercised due diligence to discover the cause of his father's death, where it apparently was indicated on the death certificate, was a question of fact for the finder of fact and that summary judgment on the issue was not, therefore, appropriate. *Id.* at 360. The *Hathaway* court stated,

> The question of whether due diligence under the circumstances required an examination of public records or any other particular form of investigation is properly a question for the trier of fact after hearing all of the evidence, rather than a question of law to be determined by summary judgment based upon the limited evidence in this record.

*Id.*

With respect to operation of the discovery rule in the context of medical malpractice actions, the Tennessee Supreme Court more recently set out the standard

-10-

governing a plaintiff's duty to exercise reasonable care to discover his injury and the identity of the actor whose tortious conduct caused it in *Sherrill v. Souder*, stating:

> In summary, a medical malpractice cause of action accrues when one discovers, or in the exercise of reasonable diligence should have discovered, both (1) that he or she has been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful conduct caused the injury. A claimant need not actually know of the commission of a wrongful action in order for the limitations period to begin, but need only be aware of facts sufficient to place a reasonable person on notice that the injury was the result of the wrongful conduct of another. If enough information exists for discovery of the wrongful act through reasonable care and diligence, then the cause of action accrues and the tolling of the limitations period ceases. Neither actual knowledge of a breach of the relevant legal standard nor diagnosis of the injury by another medical professional is a prerequisite to the accrual of a medical malpractice cause of action.
>
> . . .
>
> As a matter of policy, our discovery rule stakes out a sensible middle ground that protects both those making claims, by ensuring that the period during which a malpractice suit can be filed does not expire before discovery, and those against whom claims are made, by preventing the prosecution of stale medical malpractice claims. *The cause of action accrues on inquiry notice of a wrongful act.*

*Sherrill v. Souder*, 325 S.W.3d 584, 595 (Tenn. 2010) (emphasis added) (citations and footnote omitted). As noted above, inquiry notice as construed in Tennessee is greater notice than constructive notice but less than actual notice. *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 485 (Tenn. 2012). It is found when a person has notice of all the facts that, when pursued "with reasonable diligence and good faith[,]" would lead to discovery of the injury and the identity of the actor who caused it. *See Blevins v. Johnson County*, 746 S.W.2d 678, 683 (Tenn. 1988). What constitutes reasonable diligence and good faith must be determined by the entirety of the circumstances. *Sherrill*, 325 S.W.3d at 597 (quotation omitted). It is a fact-driven inquiry, and summary judgment on the question is appropriate only if the inferences "reasonably drawn from the uncontroverted facts" could lead to only one conclusion. *Id.*

The plaintiff in *Strine v. Walton* invoked the discovery rule to toll the statute of limitations applicable to her claim for negligent entrustment. *Strine v. Walton*, 323 S.W.3d 480 (Tenn. Ct. App. 2010). In *Strine*, we affirmed summary judgment in favor of the defendant on determining that the plaintiff failed to exercise reasonable care and due

-11-

diligence where the original defendant identified the correct defendant in his answer, but the plaintiff failed to amend her complaint until two years later. *Id.* at 492. We emphasized in *Strine* that plaintiffs "cannot simply wait for information regarding a potential defendant to come to them[,]" and that ignorance of facts that reasonably should have been discovered in the exercise of due diligence will not trigger operation of the discovery rule to toll the statute of limitations. *Id.*

*Grindstaff v Bowman*, like the present case, arose from a collision between a vehicle operated by a defendant allegedly during the course and scope of his employer's business on February 12, 2003. *Grindstaff v. Bowman*, No. E2007-00135-COA-R3-CV, 2008 WL 2219274 (Tenn. Ct. App. May 29, 2008) (no perm. app. filed). The plaintiffs in *Grindstaff* filed their complaint against the defendant driver in January 2004, shortly before expiration of the limitations period. *Id.* at *1. There was no further activity in the case until May 2005, when defense counsel informed plaintiffs that it appeared that the defendant was driving in furtherance of his employer's business when the collision occurred. *Id.* The defendant driver answered a few days later but did not mention his employer or "allude to the alleged agency relationship mentioned in the [defense counsel's] letter." *Id.* Plaintiffs filed a motion to amend their complaint to add the defendant's employer approximately three weeks later. *Id.* The original defendant filed an answer to plaintiffs' amended complaint, admitting that he was acting within the course and scope of his employment; the defendant's employer filed a motion for summary judgment based on expiration of the limitations period. *Id.* at *2. Plaintiffs invoked the discovery rule to toll the statute of limitations, and the trial court awarded summary judgment to the employer. We affirmed.

The plaintiffs in *Grindstaff* asserted an argument similar to that asserted by Plaintiffs in this case — that they had no reason to believe the individual defendant was acting within the scope of his employment until they received the May 2005 letter from defense counsel. *Id.* at *2. Viewing the record in *Grindstaff* in a light most favorable to the plaintiffs, however, we noted that it "demonstrate[d] a lack of due diligence by the plaintiffs in investigating their case during the *28 months* between the car accident with [the individual defendant] and the discovery that [he] was allegedly acting within the scope and course of his employment[.]" *Id.* at *6 (emphasis in the original). The *Grindstaff* court noted that the case was "quite similar to *Huffman v. Baldwin*," wherein the Court stated:

> Plaintiff did not become aware of [the second defendant's] involvement ... until the deposition of [the first defendant, who was the driver in a car accident] ..., more than two years after the accident.... Notably absent from Plaintiff's affidavits is whether Plaintiff, or anyone in her behalf, made any effort to talk with [the first defendant] at any time between the date of the

-12-

accident and the time of his deposition ... [V]iewing the evidence in the record before us in the light most favorable to the plaintiff, we believe that it is clear that the plaintiff failed to exercise due diligence by delaying more than two years in taking the deposition of [the first defendant].

*Id.* at *7 (quoting *Huffman v. Baldwin*, No. 03A01-9508-CV-00268, 1996 WL 134949, at *3 (Tenn. Ct. App. Mar. 25, 1996)). The *Grindstaff* court distinguished the case from those in which "the plaintiff was aware of *neither* the existence of a tort *nor* the identity of the tortfeasor during the disputed time period, and the facts were such that a jury could reasonably conclude that a duty to investigate never arose." *Id.* (emphasis in the original). Noting that the plaintiffs "knew about the tort immediately, yet apparently did essentially nothing to investigate it for 28 months," until receiving defense counsel's May 2005 letter, the *Grindstaff* court opined that it was "apparent that a modicum of investigative effort by the plaintiffs would have revealed [the individual defendant's] employment status, and thus the potential liability of [his employer], in relatively short order after the accident." *Id.* The Court held:

> even giving the plaintiffs the benefit of all reasonable inferences, as we must, we find no facts from which we can reasonably infer that the plaintiffs undertook to investigate this accident in a diligent fashion. We will not reward the plaintiffs' failure to investigate their case by extending the statute of limitations simply because they subsequently discovered facts that could easily have been unearthed months earlier. To do so would defeat the purpose of the statute of limitations without advancing the purpose of the discovery rule.

*Id.*

*Huffman v. Baldwin* was a wrongful death action filed by the mother ("Mother") of a minor child ("Daughter") who was killed in an automobile accident in June 1987. *Huffman v. Baldwin*, C.A. No. 03A01-9508-CV-00268, 1996 WL 134949 (Tenn. Ct. App. Mar. 25, 1996) (no perm app. filed). At the time of the accident, Daughter was a passenger in a vehicle operated by Bruce Baldwin ("Mr. Baldwin"), whose alleged negligence proximately caused the accident. *Id.* at *1. In August 1990, Mother moved to amend her complaint to add Harris Webb ("Mr. Webb") as a defendant. *Id.* Mother alleged that Mr. Webb was the brother of Mr. Baldwin's stepfather; that he knew that Mr. Baldwin had a propensity to drink and drive; that he knew that Mr. Baldwin had a prior DUI charge; and that, on the night of the accident, he supplied alcoholic beverages to Mr. Baldwin and Daughter. *Id.* Mr. Webb moved for summary judgment on the basis of the statute of limitations, and Mother invoked the discovery rule. The trial court granted Mr. Webb's motion upon determining that Mother had failed to exercise due diligence to

-13-

discover Mr. Webb's involvement in the incident. *Id.* We affirmed. *Id.* at *3.

In *Huffman*, Mother did not depose Mr. Baldwin, whose discovery responses provided actual notice of Mr. Webb's alleged role in the matter, until August 1989, more than two years after the car accident. *Id.* at *1. The *Huffman* court determined that "[n]otably absent" was any attempt to depose or speak to Mr. Baldwin during the intervening two years, during which Mr. Baldwin was incarcerated. *Id.* at *3. The Court noted that Mr. Baldwin was the only surviving witness of the accident; that Mother did not assert that she was misled by Mr. Baldwin; and that Mother failed to exercise due diligence to ascertain the facts where she waited more than two years from the date of the accident to take the deposition of Mr. Baldwin. *Id.*

In the current case, it is undisputed that: 1) Plaintiffs filed their original complaint before expiration of the statutory limitations period; 2) that Mr. Hauck late-filed his answer more than two months later; 3) that plaintiffs served their first set of interrogatories on Mr. Hauck less than one week after Mr. Hauck filed his answer; 4) that Mr. Hauck failed to promptly respond to Plaintiffs' discovery request; 5) that Plaintiffs filed a motion to compel discovery less than sixty days after Mr. Hauck's discovery responses were due; and 6) that Plaintiffs filed a motion to amend their complaint to add St. Jude Medical as a Defendant the same day Mr. Hauck responded to their discovery requests and amended their complaint immediately upon being given permission to do so by the trial court. It also appears undisputed that Mr. Hauck's vehicle contained no indicia suggesting that he was operating it within the course and scope of his employment with St. Jude Medical when the June 2012 collision occurred; that Mr. Hauck did not indicate to Plaintiffs, or in his late-filed answer, that he was traveling within the course of his employment at the time of the collision; and that the police report does not indicate that Mr. Hauck was operating his vehicle within the course of his employment. Additionally, there is nothing in the record to suggest that the vehicle operated by Mr. Hauck was not his personal vehicle and, in its brief to this Court, St. Jude Medical asserts that Mr. Hauck "was in his personal vehicle" at the time of the accident.

As discussed above, the statute of limitations in a tort action begins to run when the plaintiff has either actual or inquiry notice of the facts or information that would "'alert a reasonable person of the need to investigate the injury[.]'" *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012) (quoting *Sherrill v. Souder*, 325 S.W.3d at 593 n.7)(internal quotations omitted). In light of the limited record in this case, we cannot say that the only inference to be drawn from the undisputed facts is that Plaintiffs had inquiry notice that Mr. Hauck was acting within the course and scope of his employment with St. Jude Medical before they received his delayed responses to their first set of interrogatories on December 4, 2013. We accordingly reverse summary judgment in favor of St. Jude Medical and remand for further proceedings.

## Fraudulent Concealment

We turn next to Plaintiffs' assertion that the limitations period in this case should be tolled because Mr. Hauck fraudulently concealed that he was working within the scope and course of his employment when the collision occurred. Upon review of the record, we observe that Plaintiffs' assertion in the trial court that Mr. Hauck attempted to avoid implicating St. Jude Medical was made within the context of their argument that the statute of limitations was tolled under the discovery rule. Plaintiffs did not assert the doctrine of fraudulent concealment or argue that the statute of limitations should be tolled under the doctrine of fraudulent concealment. It is well-settled that issues not raised in the trial court may not be presented for the first time on appeal. *Dog House Invs., LLC v. Teal Props., Inc.*, 448 S.W.3d 905, 915 (Tenn. Ct. App. 2014). This issue accordingly is waived.

## Holding

In light of the foregoing, we reverse the judgment of the trial court. Costs of this appeal are taxed against the Appellee, St. Jude Medical S.C., Inc. This matter is remanded to the trial court for further proceedings consistent with this opinion.

_____
ARNOLD B. GOLDIN, JUDGE