IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 18, 2018 Session

## JAMES MCDONALD SHEA BROWN JR. v. JOHN F WEAVER

Appeal from the Circuit Court for Knox County
No. 3-160-17 Robert E. Lee Davies, Senior Judge

_____

No. E2018-00783-COA-R3-CV

_____

Appellant, a beneficiary under the will of Decedent, brought this action in 2017 to recover funds that Appellee allegedly improperly safeguarded when he served as conservator for Decedent in 1980. On Appellee's motion to dismiss, the trial court granted the motion finding that the complaint failed to state a claim upon which relief could be granted. The trial court also found that any cause of action arising from Appellee's conduct as conservator was barred by the statute of limitations. Appellant then filed a motion to reconsider. Following a hearing, the trial court denied Appellant's motion finding that Appellant's action was barred by the statute of limitations. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, J. and D. KELLY THOMAS, JR., SP. J., joined.

Arthur C. Grisham, Jr., Chattanooga, Tennessee, for the appellant, James McDonald Shea Brown, Jr.

James S. Tipton, Jr., Knoxville, Tennessee, for the appellee, John F. Weaver.

## OPINION

### I.    Background

In April 1978, Appellee John F. Weaver was appointed conservator for Stella Jean

Brown ("Decedent"). In 1980, Jackie Reneau, an employee of Mr. Weaver's law firm, stole 54 checks on Ms. Brown's account and made those checks totaling $27,391.88 payable to herself, signing Mr. Weaver's name as payor. These thefts took place over a four month period before Mr. Weaver discovered the forgeries. Upon Mr. Weaver's discovery of the forgeries, Ms. Reneau made one restitution payment of $1,148.96. Because the bank refused to credit Ms. Brown's account for the forged checks, Mr. Weaver hired an attorney to file an action against the bank for wrongfully honoring the forged checks. The bank ultimately paid $24,142.92. Following collection of these funds from the bank, Mr. Weaver filed a petition in Chancery Court, in October 1984, requesting the court to approve two distributions from Ms. Brown's conservatorship account: a fee for himself in the amount of $2,867.70 and a fee in the amount of $8,000.00 plus expenses for attorney's fees associated with the lawsuit filed against the bank.[1] By order entered October 19, 1984, the Chancery Court judge granted Mr. Weaver's petition for fees. Subsequently, in 1993, Mr. Weaver became Clerk and Master of Knox County Chancery Court and a new conservator was appointed to handle Ms. Brown's affairs.

Ms. Brown died on November 1, 2011. After her death, Appellant James McDonald Shea Brown, Jr., one of the beneficiaries of Ms. Brown's estate, received notice of the proceeding in chancery court to establish a lost will of Ms. Brown. In August 2013, Mr. Brown attempted to review Ms. Brown's conservatorship file but was denied access to the file by the clerk's office, not by Mr. Weaver who, at that time, was a judge in Chancery Court. On May 14, 2014, Mr. Brown returned to Chancery Court with his attorney and was granted access to the conservatorship file.

On May 10, 2017, Appellant filed a complaint in the trial court accusing Appellee of committing a fraud upon the court when he was conservator for Stella Jean Brown in the 1980s. Specifically, Appellant alleged that

> [i]n the process of reviewing the conservatorship file, [Appellant] learned of [Appellee's] negligent and wrongful acts and misrepresentations regarding the forged checks and of his being paid out of the estate of his ward, Stella Jean Brown, for the time spent in recovering the funds caused by his negligence, wrongful and fraudulent acts.

The complaint requested compensatory damages in excess of $150,000 plus unspecified punitive damages. The request for such damages was not on behalf of the Decedent's estate, but on behalf of Appellant. In his complaint, Appellant alleged that any cause of action that Decedent had passed to her heirs upon her death. Although the actions alleged in the complaint occurred over 30 years ago, Appellant averred that his complaint was

---

[1] It is unclear from the record whether Mr. Weaver requested the $2,867.70 as a fee for recouping Ms. Brown's funds from the bank or as part of his regular conservator's fee.

- 2 -

timely because it was filed within three years of his discovery of Appellee's purportedly wrongful acts.

In June 2017, Appellee filed a motion to dismiss under Rule 12.02(6). Appellee's motion alleged the following: (1) The complaint attempts to set forth an action for fraud on the court by which the plaintiff can recover damages; however, the State of Tennessee recognizes no such cause of action; (2) The complaint constitutes an impermissible collateral attack on a valid order of the Chancery Court; (3) The complaint does not show that the plaintiff is the owner of the purported claim or has standing; (4) The action is barred by Tennessee Code Annotated section 28-1-106; and (5) The action is barred by Tennessee Rule Civil Procedure 60.02.

On December 29, 2017, the trial court entered an order granting Appellee's motion to dismiss for failure to state a claim. The order also states that the statute of limitations for intentional misrepresentation ran three years after the death of decedent, and that any cause of action against Appellee became barred as of November 1, 2014. As mentioned *supra*, the instant complaint was filed on May 10, 2017, some five and a half years after Ms. Brown's death.

On January 22, 2018, Appellant filed a motion to reconsider the trial court's order dismissing his complaint.[2] Appellant argued in his motion that the trial court erroneously characterized his complaint as a fraud on the court by Appellee. Instead, Appellant contended that his complaint alleged that Appellee "committed a wrongful act against his ward, Stella Jean Brown, while acting as her conservator, and should be required to answer, account, and make amends and atone for the wrong done to his ward and her estate." On April 2, 2018, the trial court entered an order denying Appellant's motion to reconsider again finding that the statute of limitations, which ran on November 1, 2014, barred the action filed by Appellant on May 10, 2017. Appellant appealed but only designated the order on the motion to reconsider in his notice of appeal.

## II.    Issues

Although Appellee raises five issues on appeal, we only reach one dispositive issue, which is whether the trial court erred in ruling that the complaint was barred by the three year statute of limitations following the death of the decedent.

## III. Standard of Review

---

[2] The Tennessee Rules of Civil Procedure do not recognize a Motion to Reconsider. Accordingly, a motion captioned as a Motion to Reconsider should be treated as a Motion to Alter or Amend under Rule 59.04 of the Tennessee Rules of Civil Procedure. *Howell v. Ryerkerk*, 372 S.W.3d 576, 579 (Tenn. Ct. App. 2012) (citing *Tennessee Farmers Mut. Ins. Co. v. Farmer,* 970 S.W.2d 453 (Tenn. 1998)).

Generally, we review a trial court's ruling on a motion to alter or amend a judgment filed pursuant to Tennessee Rule of Civil Procedure 59.04 under the abuse of discretion standard. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Linkous v. Lane*, 276 S.W.3d 917, 924 (Tenn. Ct. App. 2008). Abuse of discretion is found "only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010) (quoting *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)). The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court. *See Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Instead, "[u]nder the abuse of discretion standard, a trial court's ruling will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made." *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012) (quoting *Eldridge*, 42 S.W.3d at 85).

Here, we must first address whether Appellant's complaint is barred by the statute of limitations. Whether a claim is barred by an applicable statute of limitations is a question of law. *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007); *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 424 (Tenn. 1996). We review the trial court's resolution of questions of law de novo, with no presumption of correctness. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014); *Armbrister v. Armbrister*, 414 S.W.3d at 692.

## IV. Analysis

Appellee argues that Appellant's action is barred by Tennessee Code Annotated section 28-1-106, which states in pertinent part:

(c)(1) If the person entitled to commence an action, at the time the cause of action accrued, lacks capacity, such person or such person's representatives and privies, as the case may be, may commence the action, after removal of such incapacity, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from removal of such incapacity, except as provided for in subdivision (c)(2).

(2) Any individual with court-ordered fiduciary responsibility towards a person who lacks capacity, or any individual who possesses the legal right to bring suit on behalf of a person who lacks capacity, shall commence the action on behalf of that person within the applicable statute of limitations and may not rely on any tolling of the statute of limitations, unless that individual can establish by clear and convincing evidence that the

- 4 -

individual did not and could not reasonably have known of the accrued cause of action.

Tenn. Code Ann. § 28-1-106(c)(1)(2). In analyzing this statute, the Tennessee Supreme Court has concluded that "[t]he tolling ends when 'such disability' is removed. . . . The disability of unsound mind is removed when the individual is no longer of unsound mind, due either to a change in the individual's condition or the individual's death." *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 105 (Tenn. 2006). Here, it is undisputed that Ms. Brown lacked capacity from April 7, 1978, when Appellee was appointed as her conservator until her death on November 1, 2011. Although the trial court did not cite a specific statute for the claim alleged by Appellant in determining that the statute of limitations had expired, neither party contends that the applicable statute of limitations exceeds three years after removal of incapacity, without relying on an exception to the tolling of the statute of limitations. In denying Appellant's motion to reconsider, the trial court stated:

> the action is clearly barred by the statute of limitations based upon the date of death of the decedent, Ms. Brown. That would have run November 1, 2014. The only way it could be tolled would be if there was some type of fraudulent concealment on the part of [Mr.] Weaver that prevented [Appellant] from discovering the fraud that he alleges was committed.

"A defense predicated on the statute of limitations triggers the consideration of three components—the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines. All of these elements are inter-related and, therefore, should not be considered in isolation." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012). While the burden of proof is on the party asserting the statute of limitations to show the bar, when that showing is made, the burden shifts to the other party to show an exception. *Coffey v. Coffey*, No. E2017-00988-COA-R3-CV, 2018 WL 4519988, at *7 (Tenn. Ct. App. Sept. 20, 2018) (citing *Redwing*, 363 S.W. 3d at 456). In this case, Appellant alleged that any cause of action belonging to Decedent passed to her heirs upon her death. Appellant's complaint does not set forth the familial relationship between Decedent and himself, and instead simply alleges that he is a beneficiary under her will. Although the actions alleged in Appellant's complaint took place over 30 years ago, Appellant argues that his complaint is timely because it was filed within three years of his discovery of Appellee's allegedly wrongful acts.

It is well-established that the discovery rule "is an equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained." *Pero's Steak and Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002) (citations omitted). The purpose of the discovery rule is to prevent the inequitable result of "strict

application" of the statute of limitations, which would require plaintiffs "to vindicate a non-existent wrong, at a time when the injury is unknown and unknowable." *Smith v. Hauck*, 469 S.W.3d 564, 569-70 (Tenn. Ct. App. 2015) (quoting *Pero's,* 90 S.W.3d at 621). In 1975, the Tennessee Supreme Court extended the discovery rule to "all tort actions predicated on negligence, strict liability, or misrepresentation." *Doe v. Coffee County Bd. of Educ.,* 852 S.W.2d 899, 904 (Tenn. Ct. App. 1992) (citing *McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487, 491 (Tenn. 1975)).

The concept of accrual, "relates to the date on which the applicable statute of limitations begins to run." *Redwing,* 363 S.W.3d at 457 (citing *Columbian Mut. Life Ins. Co. v. Martin,* 175 Tenn. 517, 526, 136 S.W.2d 52, 56 (1940)). Under the current discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has either actual or constructive knowledge of a claim. *Robinson v. Baptist Mem'l Hosp.*, 464 S.W.3d 599, 607-08 (Tenn. Ct. App. 2014). Inquiry notice and constructive notice "charge[ ] a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed." *Redwing,* 363 S.W.3d at 459 (quoting *Sherrill v. Souder,* 325 S.W.3d 584, 593 n. 7 (Tenn. 2010); *Smith*, 469 S.W.3d at 571. Usually, whether a party exercised reasonable care and diligence in discovering the injury is a question of fact. *Wyatt v. A-Best Co.*, 910 S.W.2d 851,854 (Tenn. 1995). However, where the complaint does not allege that the injured party or the injured party's representative could not have known of the injury resulting from the wrongful conduct of another, while exercising reasonable care and diligence, judgment on the pleadings or dismissal of the complaint is appropriate. *See Schmank v. Sonic Automotive, Inc.*, No. E2007-01857-COA-R3-CV, 2008 WL 2078076, at *3 (Tenn. Ct. App. May 16, 2008).

"In a discovery rule case, the plaintiff may claim that the defendant intentionally prevented him from discovering his injury. Where that claim is proved true, the doctrine of 'fraudulent concealment' applies." *Redwing*, 363 S.W.3d at 462 (fn 26) (quoting *Fahrner v. SW Mfg., Inc.,* 48 S.W.3d at 145). For over a century now, Tennessee's courts have held that the doctrine of fraudulent concealment will toll the running of a statute of limitations. *In re Estate of Davis,* 308 S.W.3d 832, 841 (Tenn. 2010); *Woodfolk v. Marley,* 98 Tenn. 467, 471, 40 S.W. 479, 480 (1897). This doctrine is one of the oldest exceptions to the statute of limitations. *Redwing*, 363 S.W.3d at 461-62; s*ee Bailey v. Glover,* 88 U.S. 342, 348-49, 21 Wall. 342, 22 L.Ed. 636 (1874).

"The statute of limitations is tolled until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the defendant's fraudulent concealment." *Redwing*, 363 S.W.3d at 463; *Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 556 (Tenn. Ct. App. 2015). At the point when the injured party discovers or should have discovered the fraudulent concealment or sufficient facts to put the injured party on actual or inquiry notice of the claim, the original statute of limitations begins to run anew, and the injured party must file a claim within the statutory limitations period. *Robinson*, 464 S.W.3d at 608-09 (citing *Redwing*, 363 S.W. 3d at 463). Therefore, the doctrine of

fraudulent concealment only tolls the statute of limitations when the defendant purposefully engages in conduct intended to conceal the plaintiff's injury or the identity of the person who caused the plaintiff's injury. *See **Redwing**,* 363 S.W.3d at 462. As noted above, "[f]or the purposes of both the discovery rule and the doctrine of fraudulent concealment, the pivotal issue is whether [Appellant] would have discovered [Appellee's] allegedly wrongful acts had he exercised reasonable care and diligence." ***Robinson**,* 464 S.W.3d at 608-09.

Here, Appellant argues that Appellee fraudulently concealed information regarding the theft of funds from Ms. Brown's account by Appellee's employee. A party invoking the fraudulent concealment doctrine must allege and prove four elements:

> (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so;
> (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence;
> (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and
> (4) that the defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

***Robinson**,* 464 S.W.3d at 608-09. Appellant's only allegation in his complaint that seeks to demonstrate that Appellee fraudulently concealed the theft from Decedent's account is the following:

> [Appellee] wrongfully failed to disclose to the court that the loss to the estate had been caused by the forgery of his own employee, failed to disclose that he had failed to adequately secure the checks for the conservator's account, and failed to disclose that he had failed to discover the forgeries over a period of four months.

However, taking these allegations in Appellant's complaint as true, we note that Appellant also alleged the following in his complaint

> [i]n the process of reviewing the conservatorship file, [Appellant] learned of [Appellee's] negligent and wrongful acts and misrepresentations regarding the forged checks and of his being paid out of the estate of his ward, Stella Jean Brown, for the time spent in recovering the funds caused by his negligence, wrongful and fraudulent acts.

In its ruling on the motion to reconsider, the trial court made the following determination concerning the complaint:

> The complaint goes on to say that the [Appellant] discovered the fraud in the Chancery Court file, so I cannot say that there was fraudulent concealment that prevented the plaintiff from discovering anything since there was no intentional conduct that kept the plaintiff from doing that.

We agree. All of the facts surrounding the loss of funds from the Decedent's conservatorship account were contained in the Chancery Court file. These facts were disclosed to and relied on by the Chancery Court judge in approving the attorney's fee incurred in recovering the funds from the bank. Decedent's subsequent conservator, appointed after Appellee became Clerk and Master, also had available to him all of the records concerning this matter. This is not to suggest that any knowledge concerning the loss of funds known or discoverable by the new conservator was also the knowledge of the Decedent. *See* ***Abels ex rel. Hunt v. Genie Indus., Inc.***, 202 S.W.3d 99 (Tenn. 2006). Instead, this simply illustrates that the conservatorship file was available for inspection by the new conservator in the 1990s and that the information concerning the forgery and the recovery of the funds was not concealed by Appellee. Turning to Appellant's complaint, there are no allegations in the complaint detailing specific actions taken by Appellee to conceal the records concerning the loss to Decedent's account. As such, Appellant's complaint is legally insufficient to support a finding that the Appellee took affirmative steps to conceal any wrongful acts against the Decedent.

We turn now to the question of discovery of the purported claim, which is inextricably linked to the doctrine of fraudulent concealment. At the outset, we note that Appellant does not allege any facts in his complaint that indicate he could not have timely discovered Appellee's actions through the exercise of reasonable care and diligence. Tennessee Code Annotated section 28-1-106(c)(2) specifically requires Appellant to "establish by clear and convincing evidence that [he] did not and could not reasonably have known of the accrued cause of action." Here, the entire Chancery Court file, including the complaint and order concerning the lost funds, as well as required accountings filed by Appellee were available as a public record. Moreover, the facts relied on by Appellant to bring this action were readily discovered following a single examination of the conservatorship file. This examination could have been conducted earlier. Nonetheless, Appellant's examination of the conservatorship file occurred well before the statute of limitations expired. Appellant's review of the conservatorship file in May of 2014, clearly demonstrates that the information regarding the theft from Decedent's account, including the identity of the thief, the amount of the theft, and how the theft transpired, as well as Appellee's role in recouping the stolen funds was readily discoverable by Appellant. However, after learning of Appellee's actions within three years of Decedent's death, Appellant waited an additional two years and fifty-one weeks to file his complaint. As discussed herein, Tennessee Code Annotated section 28-1-106

allows the commencement of an action "after removal of . . . incapacity, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from removal of such incapacity." Here, without proof of an exception that tolled the statute of limitations, the maximum amount of time in which to file a complaint against Appellee was three years from Decedent's death. From our review, the complaint in this case fails to assert that the Appellant could not have discovered the claim against Appellee despite reasonable care and diligence on his part. Having failed to set forth sufficient allegations to support a finding of fraudulent concealment or that in the exercise of reasonable care and diligence that he could not have known of the Appellee's alleged wrongful acts, dismissal of Appellant's complaint is appropriate. Consequently, we conclude that the trial court did not err in denying Appellant's motion to reconsider finding that the statute of limitations had expired.

## V.    Conclusion

For the foregoing reasons, we affirm the trial court's judgment. The case is remanded to the trial court for further proceedings as may be necessary and are consistent with this Opinion. Costs on the appeal are assessed against the Appellant, James MacDonald Shea Brown, Jr., and his surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE